# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4894 | **DATE** | 6/30/2003 |
| **CASE TITLE** | U.S. Neurosurgical, Inc. vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss [17-1] is granted in part. Counts II, III and IV are dismissed from this action. Plaintiff has until 7/14/03 to submit a brief on why this court may maintain diversity jurisdiction over the state law claims. Defendant has until 7/21/03 to respond.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUL 0 1 2003 date docketed | 27 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 6/30/2003 date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

U.S. NEUROSURGICAL, INC., a Delaware )
corporation, as successor in interest to )
GLOBAL HEALTH SYSTEMS, INC., a )
Delaware corporation, )
)
    Plaintiff, )
)
vs. ) No. 02 C 4894
) Judge Joan H. Lefkow
CITY OF CHICAGO, an Illinois municipal )
corporation, )
)
    Defendant. )
)

## MEMORANDUM OPINION AND ORDER

On July 11, 2002, U.S. Neurosurgical, Inc. ("USN"), as successor in interest to Global Health Systems, Inc., ("Global"),[1] filed a complaint in this court seeking a declaratory judgment, preliminary and permanent injunctive relief and damages against defendant, the City of Chicago ("Chicago"), based on Chicago's breach of a contract (the "Contract") the parties had entered into. USN asserted that Chicago had failed to pay in excess of $500,000 for services provided under the Contract, and further challenged the constitutional validity of the Contract's dispute resolution procedures under Article I, § 10, Clause 1 of the United States Constitution ("United States Contracts Clause") and under Article I, § 16, of the Illinois Constitution ("Illinois Contracts Clause"). On July 12, 2002, after a hearing, the court denied USN's motion for a temporary restraining order.

DOCKETED
JUL 0 1 2003

---

[1] The court will refer to both USN and Global as "USN."

On July 15, 2002, USN filed a five-count complaint in the Circuit Court of Cook County based on the same underlying facts. Chicago filed a timely notice of removal of that action under 28 U.S.C. § 1441. After removal, the court granted Chicago's motion for a finding of relatedness and reassigned USN's second complaint to this court.

On October 21, 2002, USN was granted leave to file an amended complaint combining all claims from the two pending cases. In Count I, USN seeks damages for breach of contract. In Counts II and III, USN seeks injunctive relief against impairment of the obligation of contracts under the Contracts Clause of the Illinois and United States constitutions and deprivation of due process of law under both constitutions. In Count IV, USN seeks damages under 42 U.S.C. § 1983 for injuries suffered due to Chicago's violation of USN's constitutional rights. Count V seeks a declaration of the rights of the parties under the Contract and under the regulations. Count VI seeks judicial review of an administrative decision by writ of *certiorari*. USN rests this court's jurisdiction in both 28 U.S.C. §§ 1331 and 1332. USN argues that § 1331 is applicable because this case is a civil action arising under the Constitution of the United States. It further argues that this court's diversity jurisdiction is invoked under § 1331(a)(1), as USN is a Delaware corporation with its principal place of business in Maryland, Chicago is a citizen of Illinois, and the amount in controversy exceeds $75,000.

Pending before the court is Chicago's motion under Rule 12(b)(6), Fed. R. Civ., to dismiss Counts I, II, III, IV and V of USN's amended complaint. For the reasons stated below, the motion is granted in part.

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy v. Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002); *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999).

## ALLEGATIONS OF THE COMPLAINT

According to USN's amended complaint, which is taken as true for purposes of this motion, on June 30, 1995, USN entered into the Contract with Chicago for the design, installation, implementation, and management for three years, of computer information systems for data collection, case management, and billing to support the delivery of health care to approximately 250,000 people through programs and facilities administered by the Chicago Department of Health ("CDOH"). (Am. Compl. ¶ 9.) The parties' agreements, as set forth in the Contract, provided that USN would supply the CDOH with a computerized system which integrated information collected at clinics, case management information, and billing information and Chicago would compensate USN in accordance with certain specifications, including payment schedules, a project schedule and tasks, an equipment list, and a software license

agreement. (Am. Compl. ¶ 10.) The term of the Contract was 36 months, with the maximum compensation paid to USN to be $4,213,771.00. (*Id.*)

The Contract contained a dispute resolution provision (section 5.14) that authorized Chicago's Purchasing Agent (now referred to the "Chief Procurement Officer") to decide disputes concerning questions of fact arising under the Contract. (Am. Compl. ¶ 11.) The dispute resolution provision provided that any such decision by the Purchasing Agent "shall finalize the question and serve as the last procedural step before any litigation."[2] (Am. Compl. ¶ 11.)

USN and Chicago performed the Contract on a continuing basis from its inception through the assignment of the contract to a third party. (Am. Compl. ¶ 12.) During the period of implementation, USN periodically invoiced Chicago for payments due for services performed under the Contract. (*Id.*) Chicago paid many of the invoices, although delays in payment were frequent and often lengthy, and numerous invoices were not paid. (*Id.*) USN performed all duties and obligations required of it under the Contract. (*Id.*)

---

[2]The court may consider § 5.14 of the Contract, and the regulations later adopted, as they were attached to USN's Motion for a temporary restraining order on July 19, 2002, making them a part of the record, and are both referred to in USN's amended complaint and central to USN's claims. *E.g., Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1992). Section 5.14 of the Contract provides,

> Any dispute concerning a question of fact arising under this Contract which is not disposed of shall be decided by the Purchasing Agent, who shall reduce the decision to writing and who promptly shall mail or otherwise furnish a copy to the Consultant. The Purchasing Agent's decision shall finalize the question and serve as the last procedural step before any litigation.
>
> The Consultant shall not withhold performance of any Service required under this Contract during this resolution period, including judicial resolution. During the resolution, including judicial resolution, the City shall continue to make payments to the Consultant for undisputed Deliverables, as provided in Article 9 "Compensation." Neither the Purchasing Agent's determination, nor the Consultant's response in connection therewith, nor the continued performance by either party, shall constitute an admission as to any factual and/or legal position in connection with the dispute, or a waiver of its rights under this Contract, by statute, in equity, or at law.

4

On March 10, 1997, USN entered into an asset purchase agreement with Health Management Systems, Inc. ("Health Management"), a New York corporation, for the sale by USN of substantially all of the assets and properties of its business, excluding specified assets. (Am. Compl. ¶ 14.) This transfer was to be made on an agreed upon closing date. (*Id.*) USN and Health Management agreed that all accounts receivable of USN under the Contract attributable to USN's business through the closing date were specifically excluded from USN's assets transferred to Health Management and were to be retained by USN, except as set forth in the schedule. (*Id.*)

On March 11, 1997, USN notified Chicago's Department of Purchases in writing of the USN-Health Management transaction, and requested consent to the assignment and transfer of the contract to Health Management. (Am. Compl. ¶ 15.) USN and Health Management agreed that the closing date was July 15, 1997, and executed a closing document which was a bill of sale, assignment, and assumption agreement dated July 15, 1997, which effected the transfer of assets to Health Management under the asset purchase agreement. (*Id.*)

On April 29, 1997, the Department of Purchases acknowledged receipt of the USN letter requesting consent to the assignment of the Contract, and transmitted the required assignment of contract documents. (Am. Compl. ¶ 16.) USN transmitted the fully executed assignment of contract documents to the Department of Purchases on May 5, 1997. (*Id.*) Chicago consented to the assignment and executed its assignment form on June 25, 1997. (*Id.*) The assignment form expressly provided that USN "authorizes and directs the Comptroller of the City of Chicago or any department of said City to pay to Assignee, all money due under said contract agreement for work performed after the effective date of this assignment." (*Id.*)

5

Between June 30, 1995, and July 15, 1997, USN under the Contract provided various materials and services at the direction of Chicago for which it had not been paid as of July 15. (Am. Compl. ¶ 17.) Prior to the closing of the assignment of the Contract to Health Management, Chicago assured USN that it would be paid promptly. (*Id.*) USN demanded payment on numerous occasions over the next two years, but Chicago failed and refused to make the payments.

On July 1, 1999, USN requested that the Department of Purchases (at this point the Department of Procurement Services) effect payment of a portion of the amounts due. (Am. Compl. ¶ 18.) The Department declined to do so, and litigation ensued concerning certain facilities management payments. (*Id.*) The Circuit Court of Cook County ordered Chicago to deposit the amount of the payments claimed by USN with the court. (*Id.*) Eventually, USN's assignee dropped its claim to the payments, and the matter was resolved by the entry of an order turning over the payments to USN. (*Id.*)

After additional informal attempts to recover payment of remaining amounts that were due had failed, USN again applied to the Department of Procurement Services, on November 23, 2001, pursuant to paragraph 5.14 of the Contract, for resolution of the dispute and payment of $532,033.35. (Am. Compl. ¶ 19.) In response, on December 13, 2001, the Department invited USN to submit a "Request for Resolution of a Dispute" within sixty days under regulations adopted by the Department on June 12, 2001, and revised on December 11, 2001. (Am. Compl. ¶ 20.) These regulations provided that the final decision of the Chief Procurement Officer "shall be conclusive, final and binding on all Parties. Within 30 Business Days after issuance of the final decision, any aggrieved Party to the Dispute may appeal the final decision to the Circuit

Court of Cook County."[3] (Am. Compl. ¶ 21.) These regulations were not in place when USN and Chicago entered into the Contract.

On February 11, 2002, USN submitted to the Department the "Request for Resolution of a Dispute," and expressly notified the Department of its position that the dispute resolution procedures contained in the Contract did not apply to the resolution of the dispute, and that USN's submission under the regulations was not intended to waive its rights and was made with a full reservation of its rights. (Am. Compl. ¶ 22.) On May 30, 2002 the Department issued a "Final Decision" resolving the dispute in Chicago's favor. (Am. Compl. ¶ 23.)

---

[3]The regulation provides,

These regulations establish dispute resolution procedures for Contracts. These procedures apply to the resolution of a Contract dispute except to the extent that the subject Contract specifies different procedures. Disputes may pertain to any issues of fact, or the interpretation of the contract based upon, relating to or arising under the Contract.

"Contract Dispute" or "Dispute" means any disagreement between a Contractor and the City as to a question of fact or as to the meaning or applicability of any term or provision of a Contract, or as to the extent of compensation due under a Contract.

If the Contractor and the Commissioner have attempted, but have been unable to resolve a disputed matter, either Party may submit a written Request for Resolution of a Dispute. As a result, the Chief Procurement Officer may consider issues of fact or interpretation of Contract language in order to render a final decision regarding the disputed matter.

The Contractor must not withhold performance of the Contract during the dispute resolution period, including judicial resolution. The Contractor shall prosecute any disputed work with the same diligence and effort as if no dispute existed.

The Chief Procurement Officer's final decision regarding the dispute shall be conclusive, final and binding on all Parties. Within 30 Business Days after issuance of the final decision, any aggrieved Party to the Dispute may appeal the final decision to the Circuit Court of Cook County. The Parties must comply with the Chief Procurement Officer's final decision, pending judicial resolution of the dispute. Neither the Chief Procurement Officer's determination, nor the continued performance by either party, constitutes an admission as to any factual and/or legal position in connection with the dispute or a waiver of any rights under the Contract.

# DISCUSSION

USN advances claims for breach of contract (Count I), violation of the Illinois and United States Contracts Clauses (Count II), violations of the Illinois and United States Due Process Clauses (Count III), violations of 42 U.S.C. § 1983 (Count IV), and further seeks a declaratory judgment (Count V) and judicial review of an administrative decision by writ of *certiorari* (Count VI). The court will begin its analysis with the federal claims (and the state counterparts). The court will thereafter address the state law breach of contract, declaratory judgment and writ of *certiorari* claims.

## A.  Contracts Clause (Count II)

Article I, § 10, Clause 1 of the United States Constitution provides, *inter alia*, that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts."[4] While the clause only refers to a "State," it is generally recognized that it also applies to state subdivisions, which would include Chicago in this case. *Horowitz-Matthews, Inc. v. City of Chicago*, 78 F.3d 1248, 1250 (7th Cir. 1996). The primary inquiry under the Contracts Clause is whether a challenged law "has, in fact, operated as a substantial impairment of a contractual relationship." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978). "An impairment rises to the level of substantial when it abridges a right which fundamentally induced the parties to contract initially or when it abridges legitimate expectations which the parties reasonably and heavily relied upon

---

[4]Article I, section 16, of the Illinois Constitution provides that "No . . . law impairing the obligation of contracts . . . shall be passed." Challenges under the Contracts Clause of the Illinois Constitution apply the same standards that govern the Contracts Clause of the United States Constitution. *See, e.g., Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 482, 693 N.E. 2d 358, 369-70 (1998).

in contracting." *Bricklayers Union Local 21 v. Edgar*, 922 F. Supp. 100, 106-107 (N.D. Ill. 1996), citing *Spannaus*, 438 U.S. at 246.

When examining whether a challenged law acts as a substantial impairment under the Contracts Clause, it is important to distinguish between a breach of a contract and an impairment of a contract. *E.g., Horowitz-Matthews, Inc.*, 78 F.3d at 1250 ("It would be absurd to turn every breach of a contract by a state or municipality into a violation of the federal Constitution."); *Yellow Cab Co. v. City of Chicago*, 3 F. Supp. 2d 919, 922 (N.D. Ill. 1998) ("[A] state's refusal to perform its obligations under a contract with a private party constitutes a breach of a contract, but does not raise a constitutional issue."). In *Horowitz-Matthews*, the Seventh Circuit analyzed the distinction between an impairment of a contract giving rise to a Contracts Clause claim and a mere breach of a contract. 78 F.3d at 1250-51. The court found it "useful and concrete" to differentiate "between a measure that leaves the promisee with a remedy in damages for breach of contract and one that extinguishes the remedy." *Id.* at 1250. The court's inquiry, therefore, was phrased as whether "Chicago, rather than merely breaking the promise that it made to Horowitz-Matthews, set up a defense that prevented the promisee from obtaining damages, or some equivalent remedy, for the breach." *Id.* at 1251. If such a defense had been set up that prevented the promisee from obtaining damages or some equivalent remedy, a Contracts Clause claim could go forward.

USN's Contracts Clause claim is premised on the view that the regulations changed the dispute resolution procedures in the Contract after it was agreed to, thereby acting as a substantial impairment depriving USN of its rights to enforce the Contract and seek and obtain damages against Chicago. Section 5.14 of the Contract, entitled "Dispute Resolution," provided that "The

9

Purchasing Agent's decision shall finalize the question and serve as the last procedural step before any litigation." The Regulation, which Chicago asserted was binding on USN, provided that "The Chief Procurement Officer's final decision regarding the dispute shall be conclusive, final and binding on all Parties. Within 30 Business Days after issuance of the final decision, any aggrieved Party to the Dispute may appeal the final decision to the Circuit Court of Cook County."

USN characterizes the impairment as substantial, in that under § 5.14, after the resolution of the administrative process had run its course, USN could enforce its contract rights against Chicago in a breach of contract suit for damages. Conversely, USN argues that under the Regulations, the administrative decision is "conclusive final and binding," and allows USN only an administrative review appeal of that "final decision." USN argues that this provides Chicago a complete defense to a suit in breach of contract. USN claims that the remedy under the regulations is a writ of *certiorari* and that such a remedy is not a breach of contract action for damages, as a writ is merely an appeal limited to the administrative record of an administrative decision resolving a dispute in which the court can either quash the *certiorari* proceeding or quash the administrative decision.

As to be expected, Chicago disagrees. Chicago argues that the regulations only afford the procedural mechanism whereby USN could adjudicate its breach of contract claim against the City. Chicago also points out that the regulations do not really conflict with the dispute resolution procedure, as the resolutions only create the specific procedure for resolving disputes. Moreover, Chicago points out that there has been no substantive change between the dispute resolution portion of the contract and the regulations. The court agrees. USN argues that the

10

dispute resolution provision and the regulations conflict because under the dispute resolution procedure after the administrative process had been completed suit could be filed, specifically a suit for breach of contract (which, presumably would be the claim brought in the administrative review). USN claims that the regulations provide that the administrative decision is conclusive, final and binding and only a appeal of that decision is allowed, and that any breach of contract action would be preempted.

Chicago correctly points out, however, that such a result is exactly what would have happened under the regulations. Under Illinois law, a breach of contract claim related to the Contract brought after the administrative process had run its course would have been preempted by the Purchasing Agent/Chief Procurement Officer's administrative decision. *E.g., Ross* v. *City of Freeport*, 319 Ill. App. 3d 835, 839-40, 746 N.E. 2d 1220, 1124-25 (2001); *Stykel* v. *City of Freeport*, 318 Ill. App. 3d 839, 845-46, 742 N.E. 2d 906, 911-12 (2001). As explained by the Illinois Supreme Court,

> when an administrative agency has rendered a final decision, the law provides that the courts may review the decision through either statutory or common law procedures. If the statute creating or conferring power on an administrative agency expressly adopts the Administrative Review Law, the provisions of the statute govern every action to review that agency's decision. If, as here, the Administrative Review Law is inapplicable, a party may seek review of a final agency decision through a common law writ of *certiorari* . . . . Because the Administrative Review Law, and correspondingly the common law writ of *certiorari* applicable here, provide for the remedy sought by Dubin, we believe an action for judicial review of the Board's discharge order provides the sole method by which Dubin might obtain the relief he seeks.

*Dubin* v. *Personnel Bd. of the City of Chicago*, 128 Ill. 2d 490, 497-99, 539 N.E. 2d 1243, 1246-47 (1989); *Stratton* v. *Wenona Cmty. Unit Dist. No. 1*, 133 Ill. 2d 413, 427-28, 551 N.E. 2d 640, 645-46 (1990) ("Where a final administrative decision has been rendered and the circuit court

11

may grant the relief which a party seeks within the context of reviewing that decision, the circuit court has no authority to entertain independent actions regarding the actions of an administrative agency.").

Thus, this alleged inability to bring a breach of contract action after the administrative process has runs its court which USN claims is illusory. Under either the dispute resolution procedures or the regulations, after such a claim was asserted administratively it is only properly challenged through a writ of *certiorari*. Even if USN claims that before the regulations it could have aired its grievances through a breach of contract action after it completed the administrative review process, that action would have been preempted. The reviewing court could then only provide relief from the agency decision by means of a writ of *certiorari*. This is the very same process under the regulations. Accordingly, no substantial impairment on a contract is present to support a theory under either the United States or Illinois Contracts Clauses. The Count II claims are dismissed with prejudice.

## B.     Due Process (Count III)

USN asserts both procedural and substantive due process claims against Chicago.[5] With respect to the procedural claims, USN asserts that the regulations deprived it of due process "by not allowing for the obtaining and presentation of evidence, the presentation of witnesses, the disclosure of evidence relied upon by the Department, and the cross-examination of witnesses used by the Department . . . ." (Am. Compl. ¶ 37.) As the Seventh Circuit has noted, however,

---

[5] USN brings Due Process Claims under both the United States and Illinois constitutions. While the Illinois Supreme Court has stated that it "labor[s] under no self-imposed constraint to follow federal precedent in 'lockstep' in defining Illinois' due process protection," *People* v. *Washington*, 171 Ill. 2d 475, 485, 665 N.E. 2d 1330, 1335 (1996), USN fails "to cite, much discuss, any case law holding that an Illinois court" expanded any of the rights set forth in this case beyond those in the Fourteenth Amendment. *Trejo* v. *Shoben*, 319 F.3d 878, 889 (7th Cir. 2003). Thus, the court applies the Illinois and United States Due Process clauses with the same standards. *Id.*

12

"a plaintiff who brings a section 1983 action is not required to first exhaust his state remedies. The Supreme Court, however, has held that if adequate state remedies are available to the plaintiff, the plaintiff's right to procedural due process is not violated; therefore, the plaintiff has no grounds for a section 1983 action." *Kauth* v. *Hartford Ins. Co. of Illinois*, 852 F.2d 951, 955 n.8 (1988); *see also*, *Holstein* v. *City of Chicago*, 29 F.3d 1145, 1148-48 (7th Cir. 1994).

In *Holstein*, a car owner who had his car towed brought suit against Chicago claiming that the procedures comprising his post-tow administrative hearing were unconstitutional because they deprived him of due process of law. 29 F.3d at 1148. The court noted that, "[i]n Illinois, a party disappointed in a determination made by a municipality's administrative agency may seek review in the circuit court by the common law writ of *certiorari*" and that such "[r]eview is extremely broad in scope and extends to all questions of fact and law contained in the record before the court, including de novo review of any constitutional issues." *Id.* The court further noted that if a court on return of the writ of *certiorari* found that the administrative proceedings did not comply with law, the "judgment and proceedings . . . will be quashed." *Id.*, quoting *Stratton*, 133 Ill. 2d at 427, 551 N.E. 2d at 645. The court found this remedy sufficient to comport with procedural due process. *Id.*

In *Su* v. *Selcke*, No. 88 C 4687, 1988 WL 121526 (N.D. Ill. Nov. 7, 1988), a plaintiff brought suit against the Illinois Department of Professional Regulation ("IDPR") alleging, among other things, that irregularities in a hearing violated the due process clause. *Id.* at *4. The court noted that the plaintiff could appeal to the state court and that "the state court must assure itself that the administrative hearing complied with due process." *Id.* at *6, citing *Lee* v. *City of*

13

*Peoria*, 685 F.2d 196, 201 (7th Cir. 1982). The court concluded that "the state's review of the IDPR decision provides an adequate post-deprivation remedy." *Id.*

USN argues that because a § 1983 due process claim is separate and distinct from any administrative review, it should be decided on an expanded record. USN attempts to distinguish *Holstein* on grounds that the action in that case was for a declaratory judgment and not brought under § 1983 and, therefore, is distinguishable, an argument the court has a difficult time accepting. *See, e.g., Veterans Legal Defense Fund v. Schwartz*, –F.3d–, 2003 WL 21257126, at *4 (7th Cir. May 30, 2003) ("While a plaintiff is not required to exhaust state remedies to bring a § 1983 claim, this does not change the fact that no due process violation has occurred when adequate state remedies exist.) While USN does point to cases in which § 1983 actions were combined with administrative review, *e.g., Roger v. Desiderio*, 58 F.3d 299, 301 (7th Cir. 1995) ("An administrative review action uses the administrative record, but a party aggrieved by an agency's decision may join a claim under 42 U.S.C. § 1983 and obtain a decision of the constitutional issue on an expanded record."), that does not change the fact that when, as here, post-deprivation remedies exist, the federal claim fails. The court agrees with Chicago that USN has a post-deprivation remedy for any violations of procedural due process by raising such claims through *certiorari* review. As in *Holstein*, if on review of the administrative proceedings it is found that procedural due process was not afforded, the proceedings could be quashed. This is a sufficient remedy to comport with procedural due process. Accordingly, USN's procedural due process claim fails as a matter of law.[6]

---

[6]Instructive in this analysis is the case of *Barwacz v. City of Chicago*, No. 95 C 1386, 1995 WL 354262, at *1 (N.D. Ill. June 9, 1995). In that case, under a similar factual scenario, the plaintiff brought a procedural due process claim under § 1983 challenging the procedures afforded him by a state administrative agency. In dismissing

14

USN also alleges violations of its substantive due process rights under the Fourteenth Amendment. Substantive due process bars "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels* v. *Williams*, 474 U.S. 327, 331 (1998). USN asserts that its substantive due process rights were violated because it "challeng[es] the regulations as serving a purpose incompatible with the Constitution, namely, the impairment of the obligation of contract." (Resp. at 20.) As the Seventh Circuit has recently noted, "[b]oth the Supreme Court and this Court have 'emphasized how limited the scope of the substantive due process doctrine is.'" *Lee* v. *City of Chicago*, 330 F.3d 456, 457 (7th Cir. 2003), quoting *Dunn* v. *Fairfield Cmty. High Sch. Dist. No. 225*, 158 F.3d 962, 965 (7th Cir. 1998), citing *Washington* v. *Glucksberg*, 521 U.S. 702 (1997). "Unless a government practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary or irrational." *Lee*, 2003 WL 21196550, at *8. To overcome the lenient rational basis standard, a plaintiff must show both that (1) the state's actions were arbitrary and irrational and (2) the state committed a separate substantive constitutional violation or that state law remedies are inadequate to remedy the deprivation. *Strasburger* v. *Board of Educ., Hardin County Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 357 (7th Cir. 1998).

---

the complaint under Rule 12(b)(6), Judge Holderman noted that the plaintiff had a post deprivation remedy, that being the common law writ of *certiorari*. *Id.* On appeal, in an unpublished opinion, the Seventh Circuit affirmed as modified on grounds that the district court never had jurisdiction under the *Rooker-Feldman* doctrine because plaintiff was seeking review of a state court decision in federal court. *See Barwacz* v. *City of Chicago*, 82 F.3d 420, 1996 WL 175073 (7th Cir. April 11, 1996). Because it found jurisdiction lacking, the court did not reach the issue of post-deprivation remedies Judge Holderman found dispositive. Presumably the Seventh Circuit's ruling on jurisdictional grounds would no longer be controlling based on *City of Chicago* v. *International Coll. of Surgeons*, 522 U.S. 156, 174 (1997), where the Supreme Court held that a complaint for administrative review may be properly asserted under a district's court supplemental jurisdiction when combined with a valid federal law claim. Thus, jurisdictional grounds now aside, Judge Holderman's reasoning would apply with equal force here that the writ of *certiorari* provides USN with adequate post-deprivation remedies and that procedural due process is not violated.

15

The substantive constitutional violation USN relies on is, presumably, its argument under the Contracts Clause, which the court has already noted fails to state a claim. Moreover, USN's amended complaint contains no allegations that any of Chicago's actions were either arbitrary or irrational. Indeed, it is difficult to imagine how Chicago's adopting specific administrative procedures for the resolution of contract disputes would not be rationally to a legitimate government interest. *Lehnhausen* v. *Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973) ("The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.") (internal quotations marks omitted); *Illinois Health Care Ass'n* v. *Illinois Dep't of Public Health*, 879 F.2d 286, 289 (7th Cir. 1989) ("[I]f the court can hypothesize plausible reasons for legislation that are within the legitimate goals of a government, nothing else is required to validate the governmental classification and it does not matter whether the reasons advanced actually motivated the legislative action."), quoting *Evans* v. *City of Chicago*, 873 F.2d 1007, 1016 (7th Cir. 1989). Accordingly, the substantive due process claim is dismissed with prejudice.[7]

## C. State Law Claims

Under Illinois law, USN asserts a theory of breach of contract (Count I) and seeks a declaratory judgment (Count V) and judicial review of an administrative decision by writ of *certiorari* (Count VI). Chicago, assuming that the federal claims would be dismissed, urges the court to decline to exercise supplemental jurisdiction and to remand these claims to state court. The court, while likely to have done so under Chicago's view of the case, notes that USN

---

[7]USN also specifically brings an action under 42 U.S.C. § 1983 for damages. To the extent the Count II and Count II claims fail, this claim fails also.

16

asserted jurisdiction in the amended complaint under both 28 U.S.C. § 1331 and 28 U.S.C. § 1332, a point that Chicago did not acknowledge. The court cannot decline to exercise supplemental jurisdiction over a claim for which original jurisdiction is present. In any event, the court does not believe that it may take diversity jurisdiction over a state claim for administrative review. *See City of Chicago v. International Coll. of Surgeons*, 522 U.S. 156, 172 (1997) ("But to decide that state law claims for on-the-record review of a local agency's decision fall within the district court's 'supplemental' jurisdiction under § 1367(a), does not answer the question, nor do we, whether those same claims, if brought alone, would substantiate the district court's 'original' jurisdiction over diversity cases under § 1332."). In *International College*, the Court made clear that a federal court's supplemental jurisdiction was invoked when a federal claim and a state administrative review claim were brought together. *Id.* at 169. The Court, however, as noted above, did not address the issue in regard to diversity jurisdiction, and noted that the Seventh Circuit's decision that the administrative review claims were not "civil actions" within a federal court's original jurisdiction was flawed because the "federal claims suffice to make the actions 'civil actions' within the 'original jurisdiction' of the district courts for purposes of removal." *Id.* at 165. Here, no federal claims remain, and all that would be left for the court to undertake is to preside over an appeal of a state court judgment,[8] something the court doubts it has power to do. Nevertheless, since this issue was not briefed by the parties, the court will allow USN a chance to persuade the court otherwise.

---

[8]That the review would be of an state administrative agency rather than a state court is irrelevant. *See, e.g., Buckley v. Illinois Judicial Inquiry Bd.*, 997 F.2d 224, 227 (7th Cir. 1993).

17

## CONCLUSION

For the reasons stated above, Chicago's motion to dismiss is granted in part [#17]. The Count II, III and IV claims are dismissed from the action. USN has until July 14, 2003 to submit a brief on why this court may maintain diversity jurisdiction over the state law claims. Chicago has until July 21 to respond.

ENTER: *[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: June 30, 2003