## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

U.S. NEUROSURGICAL, INC., a Delaware, )
corporation, as successor in interest to )
GLOBAL HEALTH SYSTEMS, INC., )
a Delaware corporation, )
)
     Plaintiff, )    **No. 02 C 4894**
)
     vs. )    **Judge Joan H. Lefkow**
)
CITY OF CHICAGO, an Illinois municipal )
corporation, )
)
     Defendant. )
)

## MEMORANDUM OPINION AND ORDER

This action arises from a contract between Global Health Systems, Inc. ("Global") and

defendant City of Chicago (the "City") for the installation of a computer information system for the

Chicago Department of Health ("CDOH"). Plaintiff U.S. Neurosurgical, Inc. ("USN"), as the

purported successor in interest to Global, alleges, *inter alia*, that the City breached its contract with

Global and seeks recovery of unpaid invoices.[1] Before the court are the City's motion for summary

judgment and, in the alternative, partial summary judgment, motion to strike USN's amended Local

Rule 56.1 statement of material facts, and motion to strike opposing counsel's remarks as uncivil and

unprofessional. Also before the court is USN's motion for partial summary judgment. The court

has jurisdiction pursuant to 28 U.S.C. § 1332(a). For the reasons stated below, the court grants the

---

[1] USN voluntarily dismissed without prejudice counts two (impairment of obligation of contract), three
(deprivation of due process), four (violation of 42 U.S.C. § 1983), five (declaratory judgment), and six (judicial
review of administrative decision/writ of *certiorari*) of the Amended Complaint. The City also voluntarily dismissed
without prejudice its second, third, fourth, and fifth affirmative defenses relating to the voluntarily dismissed counts.
*See* Stipulation of the Parties to Litigate the Breach of Contract Claim, Docket #47; Minute Order, Docket #48.
Thus, the only count before the court is USN's claim for breach of contract.

City's motion to strike opposing counsel's remarks as uncivil and unprofessional but denies the remaining motions.

## I.    SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

## II.    MOTION TO STRIKE OPPOSING COUNSEL'S REMARKS

As typified by the City's motion to strike opposing counsel's remarks as uncivil and unprofessional, the various motions and briefs in support of the parties' respective positions reveal that the litigation of this case devolved into enmity between counsel representing USN and the City,

2

such that counsel for USN deemed it necessary to engage in unnecessary and improper attacks on counsel for the City.

In its Memorandum of Law opposing the City's motion for summary judgment, USN accuses the City of filing a Local Rule 56.1 Statement of Material facts that "is a mostly fictional document, replete with outright falsities, misrepresentations, distortions, and omissions, a presentation fully deserving of censure." USN's Brief at 1. In its Response to the City's motion to strike USN's statement of facts, USN again accuses the City of "false assertions,""misrepresentations and distortions," "after-the-fact distortions," and describes as "a complete fiction" the City's argument that the work that Global performed at the City's request was within the work contract based on "distortions" of terms such as "interface" and "programming." *See* USN Brief at 1, 6, 8, 10. USN also employs sarcasm in an attempt to discredit the City's arguments, offering the following as an example of USN's claimed proper incorporation of multiple facts into single paragraphs in its Local Rule 56.1 statement: "The city attorney sat down at his desk, turned on his computer, opened the USN file, and began to type a motion, without reviewing the facts or the law." *See id.* at 5. Not only are such attacks unnecessary and distracting from the issues in the case, they do not assist the court in resolving the matter and give the impression, whether accurate or not, that the position taken by USN is unsupported by the law or facts because it has resorted to such distractions. As recognized in the Seventh Circuit's Preamble to the Standards for Professional Conduct, "[c]onduct that may be characterized as uncivil, abrasive, abusive, hostile, or obstructive impedes the fundamental goal of resolving disputes rationally, peacefully, and efficiently. Such conduct tends to delay and often to deny justice." Standards for Professional Conduct within the Seventh Federal Judicial Circuit, *available at* http://www.ca7.uscourts.gov/Rules/rules.htm#standards.

3

As is fairly commonplace among litigants in the Northern District, at least as before this court, the City has cited to various portions of the record in support of facts asserted in its Local Rule 56.1 statement of facts when, in some instances, the cited portions of the record do not support the asserted fact or the materials on which the City relies are inappropriate. For example, the City cites to ¶ 4 of the Amended Complaint as evidence of the fact that USN claims that it is the successor in interest to Global, with whom the City has a contract for implementation of a computer system at the CDOH. *See* City's Local Rule 56.1 Statement at ¶ 2. Unfortunately, ¶ 4 of the Amended Complaint does not mention anything about USN's being Global's successor in interest nor does it mention any contract between Global and the City. As such, the asserted fact in ¶ 4 is not supported by the cited evidence, and under Local Rule 56.1, the court is not permitted to consider this asserted fact in resolving the City's motion for summary judgment. Additionally, portions of the City's Local Rule 56.1 statement are arguments rather than factual averments, which is improper under Local Rule 56.1. That being said, such errors do not render accurate or appropriate USN's assertions that the City misrepresented and distorted the evidence and the law.

The primary bases for USN's attacks on the City's counsel relate to differing versions of the facts and differing interpretations of the facts. That USN's witness and the City's witness have different understandings of the contract's terms and requirements does not mean that the City's position is fallacious. Such discrepancies are not unusual in motions for summary judgment, as the issue to be resolved in such a motion is whether there are any genuine issues of material fact in dispute. *See* Rule 56(c). Moreover, nothing in the Local Rules of the Northern District of Illinois prohibits parties from *accurately* paraphrasing testimony or evidence in their Local Rule 56.1 statements. While it may be more prudent for a party to simply aver that "Witness X states" or

4

"Witness X stated" in order to avoid unnecessary objections, the Local Rules do not prohibit parties from stating something to the effect of "Witness X claims," "Witness X alleges," or "according to Witness X."[2] With respect to lawyers' duties to other counsel, the Standards for Professional Conduct within the Seventh Federal Judicial Circuit provide, *inter alia*,

> We will practice our profession with a continuing awareness that our role is to advance the legitimate interests of our clients. In our dealings with others we will not reflect the ill feelings of our clients. We will treat all other counsel, parties, and witnesses in a civil and courteous manner, not only in court, but also in all other written and oral communications. 2. We will not, even when called upon by a client to do so, abuse or indulge in offensive conduct directed to other counsel, parties, or witnesses. We will abstain from disparaging personal remarks or acrimony toward other counsel, parties, or witnesses.... 4. We will not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety.

*Id.* As evidenced above, USN's counsel failed to heed its obligation to litigate this matter in a civil and courteous manner by engaging in unnecessary and unfounded attacks on opposing counsel. The court, therefore, grants the City's motion to strike opposing counsel's remarks.

## III.    LOCAL RULE 56.1

In what has become an all too common exercise, the court must resolve the parties' various disputes with regard to their Local Rule 56.1 filings before addressing the merits of the parties' motions for summary judgment. The Local Rules of the Northern District of Illinois provide detailed instructions as to how litigants should approach their summary judgment motions and responses. The purpose of Local Rule 56.1 is to isolate legitimately disputed facts and assist the court in its summary judgment determination. *See Bordelon* v. *Chicago School Reform Bd. of Trustees*, 233

---

[2]The court notes that what a person "claims" or "alleges" is generally not a material fact. At this stage in the litigation process and in a Local Rule 56.1 statement, what matter are the material facts based on the evidence of record that either support or refute what has been claimed or alleged.

F.3d 524, 527 (7th Cir. 2000) (stating that "[t]hese rules assist the court by organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence") (citation omitted).

Pursuant to Local Rule 56.1(a), a party seeking summary judgment must file with its brief a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." Local Rule 56.1(a) provides that the statement of material facts must "consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." Part (b) of Local Rule 56.1 requires the party opposing summary judgment to file a concise response to the movant's statement of material facts. That statement is required to include a response to each numbered paragraph in the moving party's statement, including in the case of any disagreement, "specific references to the affidavits, parts of the record, and other supporting materials relied upon." The rule is very clear that "all material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3)(B).

In this case, neither party has complied with the dictates or spirit of Local Rule 56.1, rendering useless their Local Rule 56.1 Statements as "road maps," *Waldridge* v. *Am. Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994), to assist the court by pointing to "the specific undisputed evidence in the record that supports the party's position." *Ford* v. *Lumberbmens Mutual Cas. Co.*, 197 F.R.D. 365, 366 (N.D. Ill. 2000). Such failures are even more egregious in light of the parties' omission of a recitation of the relevant facts within their memoranda of law in support of their motions for summary judgment. The parties, instead, chose to refer the court to their respective Local Rule 56.1

statements of fact, which hardly facilitates the court's resolution of the pending motions. *See Malec* v. *Sanford*, 191 F.R.D. 581 at 585 (N.D. Ill. 2000) (stating that "56.1 statements do not abrogate a party's obligation to recite its version of the facts in its supporting memorandum; it is inappropriate in one's memo to simply refer the Court to the 56.1 statement"). Further complicating matters was the tendency of both parties to cross-reference previous facts, responses, and arguments, rather than citing to the evidence or stating the argument directly, and to refer to facts in their memoranda without citing to the appropriate paragraph in their Local Rule 56.1 statements.

Rather than going paragraph by paragraph through the parties' Local Rule 56.1 materials, the court notes as a general matter that both parties' Local Rule 56.1 materials are so deficient that neither party has demonstrated that there are no genuine issues of material fact. The City's 188-paragraph Local Rule 56.1 Statement includes numerous paragraphs of argument, factual assertions unsupported by the evidence to which they cite, and immaterial facts. The City's Local Rule 56.1 Statement yielded a 115-page response and a 156-paragraph Statement of Additional Facts by USN, neither of which attempts to follow Local Rule 56.1's directive that they be "concise." *See, e.g.*, *Buttron* v. *Sheehan*, No. 00 C 4451, 2003 WL 21801222, at *3 (N.D. Ill. Aug. 4, 2003) (stating that a 101-page Local Rule 56.1 Response, a 119-page Local Rule 56.1 Counterstatement, and a 300-page Reply to the Counterstatement did not meet the Local Rules' requirement that the responses and reply be concise). The City then responded to USN's Statement of Additional Facts by first raising two pages of general objections to which it then referred when deeming that no response was required to certain additional facts. In stating its general objections, the City specified that it "does not necessarily dispute each and every non-material fact included in USN's Local Rule 56.1(b)(3)(B) Statement of Additional Facts, but responding to each of these non-material statements would be

7

extremely onerous, time consuming, and unnecessary . . . ." Such a response certainly fails to provide the court with any assistance in determining whether there are factual disputes and places an "extremely onerous, time consuming and unnecessary" burden on the court to do the parties' work for them, which it declines to do in this case.

USN submitted a 292-paragraph Local Rule 56.1 Statement to which the City responded by again raising its general objections, including its objection that responding to these statements would be "onerous, time consuming, and unnecessary" and asserting that "[n]o response [is] required" to well over 100 paragraphs of USN's Local Rule 56.1 Statement. Like the City's statement, USN's Local Rule 56.1 statement includes numerous paragraphs of immaterial facts, arguments, and conclusory assertions, none of which are appropriate. *See Lujan* v. *Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3189, 111 L. Ed. 2d 695 (1990) (summary judgment is not a place "to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit"); *Cady* v. *Miss Paige, Ltd.*, No. 02 C 4867, 2004 WL 1144044 (N.D. Ill. Apr. 30, 2004) ("Local Rule 56.1 . . . emphasizes that it is inappropriate to include legal conclusions and/or argument in the Rule 56.1 statements of fact.").

Because neither party complied with the Local Rules in briefing the pending summary judgment motions and because there are clearly issues of material fact precluding summary judgment, the court finds it unnecessary engage in a discussion of either party's breach of contract argument. The court also finds it unnecessary to grant the City's motion to strike USN's Local Rule 56.1 statement of material facts, and therefore denies the same. Nevertheless, the court has compiled a brief summary of facts that are undisputed by either party and will address the merits of the parties' arguments with respect to whether USN is a proper party in this case.

8

## IV. UNDISPUTED FACTS

On June 30, 1995, Global entered into a written contract with City in which Global agreed to design, install, implement, and manage a computer information system for the CDOH. This computer system is known as the Global Health Information System or "GhiS." The contract included a choice-of-law provision, which specified that the contract was governed as to performance and interpretation by the laws of the State of Illinois. At all relevant times, Patrick Lenihan was a Deputy Commissioner for the CDOH and was the executive project manager and key representative for the City. At the time the contract was executed, Alan Gold was the president and chief executive officer of Global.

### A. Global and Health Management Systems, Inc. Asset Purchase Agreement

Global began its work under the contract in 1995, which it continued until July 15, 1997. On July 15, 1997, Global assigned its rights under the contract to Health Management Systems, Inc. ("HMS"), through an asset purchase agreement dated March 10, 1997. In the March 10, 1997 asset purchase agreement, Global sold substantially of all of the assets and properties of its business to HMS. Global notified the City of the asset purchase transaction between Global and HMS on March 11, 1997. Global requested the City's consent to the assignment and transfer of the contract to HMS, which the City gave on June 25, 1997 by executing an assignment form.

The transfer of assets and the contract from Global to HMS under the March 10, 1997 asset purchase agreement became effective July 15, 1997 through a Bill of Sale, Assignment and Assumption Agreement. As of July 15, 1997, the contract was assigned to HMS, and HMS assumed and agreed to perform and keep all covenants and agreements of Global. The City agreed to pay HMS for work performed after the effective date of the assignment. After the assets of Global were

9

sold to HMS, Global ceased doing business as an entity and is no longer a corporation in good standing.

## B.    Invoices

Prior to the July 15, 1997 Assignment, Global submitted invoices to the City, which the City has not paid. These invoices, which the court will refer to as the pre-July 1997 invoices, were numbered 7339, 7503, 7621, 7631, 7733, 7781, 7813, 7815, 7857, 7863, 8131, and 8132. The total amount of these invoices is $32,033.35. On September 11, 1997, invoice number 8170 was submitted to the City. This invoice specified that the amount due for "special programming" work was $250,000.

## C.    GHS, Inc. and USN Assignment and Assumption Agreement

GHS, Inc. ("GHS") was the holding company for both USN and Global. At one time, both USN and Global were wholly-owned subsidiaries of GHS. On May 27, 1999, GHS and USN entered into an Assignment and Assumption Agreement, which included a New York choice of law provision. As part of this agreement, GHS assigned to USN "all accounts receivable of [GHS] and each of its subsidiaries arising through [May 27, 1999];" however, the agreement did not include a schedule or description of the accounts receivable.

## V.    ANALYSIS

The City contends that it is entitled to summary judgment because USN has not established pursuant to Rule 17(a), Fed. R. Civ. P., that it is the real party in interest. In a diversity case such as this one, the court looks to state substantive law to determine whether a plaintiff is a real party in interest under Rule 17(a), Fed. R. Civ. P. *Am. Nat'l Bank & Trust Co. of Chicago* v. *Weyerhaeuser Co.*, 692 F.2d 455, 459-60 (7th Cir. 1982). Whether USN is a proper party in this case depends on

the assignments of accounts receivable in two agreements: the Global/HMS Bill of Sale, Assignment and Assumption Agreement, which included an Illinois choice-of-law provision, and the GHS/USN Assignment and Assumption Agreement, which included a New York choice-of-law provision. In a diversity case, this court applies the choice of law rules of the forum state to determine which state's substantive law governs the contract. *Klaxon Co.* v. *Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). Illinois respects a contract's choice-of-law clause as long as the contract is valid and the law chosen is not contrary to Illinois' fundamental public policy. *Fulcrum Fin. Partners* v. *Meridian Leasing Corp.*, 230 F.3d 1004, 1011 (7th Cir. 2000). Neither party challenges the validity of the agreements or argues that the law chosen in either contract is contrary to Illinois' fundamental public policy.

**A.     The City's Rule 17(a) Defense**

1.     Global/HMS Bill of Sale, Assignment and Assumption Agreement

Turning to the first agreement, the Global/HMS Bill of Sale, Assignment and Assumption Agreement, the City argues that Global failed to exclude the accounts receivable relating to the pre-July 1997 invoices from this agreement. Therefore, the City asserts, these receivables were transferred to HMS and, as a consequence, Global could not have assigned these receivables to USN in the 1999 assignment.

In paragraph 1.01(c)(vii) of this Agreement, Global and HMS agreed that those items listed on Schedule 1.01(c)(vii) to the agreement were specifically excluded from the Global assets transferred to HMS and were to be retained by Global. Among the items listed on this schedule was the unbilled accounts receivable relating to work performed by Global on or before July 14, 1997 for the STD and State Lab Interface projects for the CDOH. *See* City Ex. 10. The City concedes that

this item may refer to the "special programming" invoice but argues that because there is no reference in this schedule to the pre-July 1997 invoices, these receivables were not excluded from the Global/HMS Bill of Sale, Assignment and Assumption Agreement.

Paragraph 1.01(c)(ii) of the Global/HMS Bill of Sale, Assignment and Assumption Agreement, however, provides that "all accounts receivable of [Global] attributable to the Business through the Closing Date" were "specifically excluded from the Assets and shall be retained by Global and Management." City Ex. 8 at 4. According to Alan Gold, these accounts receivable were shown in schedule 3.01(e). USN Local Rule 56.1(b)(3)(B) at ¶ 103. USN, however, has not produced schedule 3.01(e) to the court or to the City. As a result, Gold's declaration alone is not sufficient to create a genuine issue of material fact as to whether these accounts receivable were excluded from the Global/HMS Bill of Sale, Assignment and Assumption Agreement. *See Buie* v. *Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) ("self-serving statements contained in an affidavit will not defeat a motion for summary judgment when those statements are 'without factual support in the record'"), *quoting Slowiak* v. *Land O 'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993). Additionally, Gold's statement as to the content of schedule 3.01(e) is hearsay.

Nevertheless, the City is not entitled to summary judgment on its assertion that the pre-1997 accounts receivable were assigned to HMS. Under Illinois law, which governs the Global/HMS Bill of Sale, Assignment and Assumption Agreement, assignments are governed by contract law, and an assignment is subject to the same requisites for validity as are other contracts, such as intent, mutuality of assent, capacity to contract, legal subject matter, and consideration. *Northwest Diversified, Inc.* v. *Desai*, 818 N.E.2d 753, 761, 353 Ill. App. 3d 378 (Ill. App. Ct. 2004), *citing Johnson* v. *Nationwide Gen. Ins. Co.*, 937 F. Supp. 186, 193 (N.D.N.Y. 1996). An assignment, "oral

12

or written, occurs when there is a transfer of some identifiable interest from the assignor to the assignee." *Id.*, *quoting Klehm* v. *Grecian Chalet, Ltd.*, 518 N.E.2d 187,164 Ill. App.3d 610 (Ill. App. Ct. 1987). The "creation and existence of an assignment is to be determined according to the intention of the parties, and that intention is a question of fact to be derived not only from the instruments executed by them, but from the surrounding circumstances." *Id.*, *quoting Rivan Die Mold Corp.* v. *Stewart-Warner Corp.*, 325 N.E.2d 357, 26 Ill. App. 3d 637 (Ill. App. Ct. 1975). Whether an assignment has occurred "is dependent upon proof of intent to make an assignment and that intent must be manifested." *Id.*, *quoting Strosberg* v. *Brauvin Realty Servs., Inc.*, 691 N.E.2d 834, 295 Ill. App. 3d 17 (Ill. App. Ct. 1998). "A valid assignment, therefore, need only to assign or transfer the whole or a part of some particular thing, debt, or chose in action and it must describe the subject matter of the assignment with sufficient particularity to render it capable of identification." *Klehm*, 518 N.E.2d at 191, *citing Evangelical Slovak Women's Union* v. *Papanek*, 132 N.E.2d 20, 23, 8 Ill. App. 2d 298 (Ill. App. Ct. 1956), *Hogan* v. *Dalziel*, 188 N.E.2d 367, 372, 40 Ill. App. 2d 19 (Ill. App. Ct. 1963). If a valid assignment has occurred, "the assignee acquires all of the interest of the assignor in the property that is transferred." *Northwest Diversified*, 818 N.E.2d at 761, *quoting Buck* v. *Ill. Nat'l Bank & Trust Co.*, 223 N.E.2d 167, 79 Ill. App. 3d 101 (Ill. App. Ct. 1967).

The City has attempted to frame this issue in such a way as to require USN to offer evidence demonstrating that the pre-1997 invoices were *not* assigned to HMS; the issue, however, is whether these invoices *were* assigned to HMS. The City's framing of the issue attempts to shift the burden to USN on what is essentially an affirmative defense. *See* 6A Wright, Miller and Kane, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 1554 (2nd ed. 1990) (stating that Rule 17(a)'s reference to an objection indicates that the challenge "is in the nature of an affirmative defense . . . ."). And the City

has not demonstrated that the Global/HMS Bill of Sale, Assignment and Assumption Agreement contained any provision specifying that the pre-1997 invoices were included among the assets assigned to HMS or otherwise identifying the pre-1997 invoices. The City has not demonstrated that the pre-1997 invoices were anything other than "accounts receivable of [Global] attributable to the Business through the Closing Date," which were excluded from the assignment. Neither party disputes that Global had submitted the pre-1997 invoices to the City before entering into the Global/HMS Bill of Sale, Assignment and Assumption Agreement, and, as such, these invoices are distinct from the "special programming" invoice, which, according to schedule 1.01(c)(vii) was for "unbilled Work . . . ." Further, schedule 1.01(c)(vii) is entitled, "Other Excluded Assets," which suggests, at a minimum, that elsewhere in the Global/HMS Bill of Sale, Assignment and Assumption Agreement assets were excluded from the assignment.

The City refers to section 1.01(viii) of the Global/HMS Bill of Sale, Assignment and Assumption Agreement, which provides that among the asserts being transferred to HMS are "all accounts receivable of the Business that have arisen prior to the Closing Date with respect to the ongoing liabilities and obligations of Global or Management to provide products or services after the Closing Date . . . ." City Ex. 8 at 3. Not only has the City failed to show that the pre-1997 invoices fall under this provision, the City's incomplete recitation of this provision ignores the likelihood that the City will be unable to show that these invoices fall under section 1.01(viii). Stated in its entirety, section 1.01(viii) states:

> all accounts receivable of the Business that have arisen prior to the Closing Date with respect to ongoing liabilities and obligations of Global or Management to provide products or services after the Closing Date (including without limitation accounts receivable with respect to all customer advance payments and maintenance fees) under any contract listed on Schedule 3.01(q) hereto, which accounts receivable are

14

identified and set forth on Schedule 1.01(a)(viii) hereto[.]

*Id.* The City has not suggested or offered evidence showing that the pre-1997 invoices were identified on Schedule 1.01(a)(viii). Accordingly, there is a genuine issue of material fact as to whether the pre-1997 invoices were assigned to HMS. The court, therefore, denies the City's motion for summary judgment on that basis.

### 2. Asset Transfer from Global to GHS

USN has represented that a few days after the July 15, 1997 closing of the sale to HMS, three of Global's directors had an informal meeting wherein they resolved to change Global's name, to cease operations, to close corporate bank accounts, to allow the corporation to expire through administrative dissolution, and to transfer Global's only remaining assets, the various accounts receivable and choses in action, including those with the City, to its parent, GHS. USN L.R. 56.1 at ¶ 261. The City denies the facts asserted in this paragraph, arguing that it relies only on the self-serving declaration of Alan Gold and there is no indication that his statements are based on personal knowledge.

The declaration of Alan Gold states under penalty of perjury, however, that the declaration is made on his own personal knowledge and that if called as a witness, he is competent to testify to the matters stated therein and that he would testify as he has stated in his declaration. This statement is also corroborated by Alan Gold's second declaration and by his testimony at his deposition. While it is true that Mr. Gold did not speak to the resolutions of Global's three directors during his deposition, the remainder of Mr. Gold's testimony is consistent with his declarations and, therefore, is sufficient to defeat summary judgment. *See Payne* v. *Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (self-serving affidavit supported by facts in the record could defeat summary judgment).

15

Additionally, the declaration of Alan Gold meets the usual requirements for evidence on summary judgment: it is based on his personal knowledge and it sets forth specific facts, including that the meeting of three directors was informal, occurred a few days after the sale to HMS, and what the directors resolved. As president of both Global and GHS, it also seems likely that Gold was aware of and participated in the meeting. To the extent that the City is suggesting implicitly that Gold cannot be believed, the court notes that it does not make credibility determinations at summary judgment. *See Abdullahi* v. *City of Madison*, 423 F.3d 763 at 773 (7th Cir. 2005) ("At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the weight of conflicting evidence . . . ."), *citing Anderson*, *supra*, 477 U.S. at 255. Accordingly, the court finds that a genuine issue of material fact exists as to whether Global validly transferred its remaining assets to GHS.

   3. GHS, Inc. and USN Assignment and Assumption Agreement

The parties do not dispute that GHS intended to transfer the Chicago receivables to USN in the GHS, Inc. and USN Assignment and Assumption Agreement. The City contends, however, that the assignment was defective because it failed to adequately describe the subject matter of the assignment.

Unlike the Global/HMS Bill of Sale, Assignment and Assumption Agreement, which included an Illinois choice-of-law provision, the GHS, Inc. and USN Assignment and Assumption Agreement contains a New York choice-of-law provision. Thus, in the absence of any argument that the USN Assignment and Assumption Agreement is valid or that New York's law is contrary to Illinois' fundamental public policy, the court applies the law of New York to determine whether the USN Assignment and Assumption Agreement assigned the Chicago receivables from GHS to USN.

*If* GHS validly assigned the Chicago receivables to USN, the court then applies Illinois law to determine whether USN is a proper party in this case

Under New York law, an assignment is valid if (1) the property to be assigned is "clearly identified;" (2) there is a "clear demonstration of the assignor's intent to assign a present right in the property," and (3), thereafter, the assignor has no control over the property. *Keoseian* v. *Von Kaulbach*, 763 F. Supp. 1253, 1256 (S.D.N.Y. 1991), *citing Miller* v. *Wells Fargo Bank Int'l Corp.*, 540 F.2d 548, 557 (2d Cir. 1976); *In re Moskowitz*, 14 B.R. 677 (S.D.N.Y. 1981).

The May 27, 1999 GHS, Inc. and USN Assignment and Assumption Agreement specified that GHS was contributing, assigning, and delivering to USN all of GHS's right, title and interest in and to the following assets of GHS as of the close of business on May 27, 1999, including "(ii) All accounts receivable of [GHS] and each of its subsidiaries arising through the Effective Time. . . ." City Ex. 11 at 2. While the May 27, 1999 Assignment did not specify that the accounts receivable were the accounts receivable for the work performed by Global under the contract with the City which had not yet been paid, Alan Gold stated that at the time of the reverse merger, GHS had no assets other than the Chicago receivables. *See* City Ex. 1 at 10-13. Thus, there was no confusion as to what accounts receivable were being transferred. Because there is a genuine issue of material fact as to whether GHS had an interest in the property being assigned and because the Chicago receivables were sufficiently identifiable in the GHS, Inc. and USN Assignment and Assumption Agreement to USN, the court denies the City's motion for summary judgment on the basis that USN is not a proper party to this lawsuit.[3]

---

[3]The City also asserted that USN cannot demonstrate that it is a proper party in interest under Rule 17(a) because the City never consented to the assignment of Global's receivables under the City contract. *See* City's Memorandum at 8. The City failed to cite to any facts or provide any legal analysis for this argument. Accordingly.

17

## B.    Waiver of Rule 17(a) Defense

USN has raised numerous arguments as to why the City has waived or is estopped from asserting its defense that USN is not a proper party to this action: (1) the defense is untimely; (2) the City is collaterally estopped from objection to USN's standing as the real party in interest; and (3) the City has admitted that USN is the proper party to this action. For the reasons set forth below, each argument fails.

First, nothing in Rule 17(a), Fed. R. Civ. P., specifies the proper procedure for raising an objection that plaintiff is not the real party in interest. *See* 6A Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1554 (2nd ed. 1990)).  Since a Rule 17(a) objection is the nature of an affirmative defense, it is appropriate to raise this objection in the answer to the complaint or in a motion to dismiss. In this case, the City answered the allegation in USN's amended complaint in October 2003 that USN was the successor in interest to Global by stating that the City lacked knowledge or information sufficient to form a belief, and therefore, denied the allegation. The City also has stated that it did not have sufficient knowledge that USN was not the real party in interest prior to conducting discovery and, as a result, it would have been improper to raise a defense for which the City lacked the appropriate level of knowledge. In any event, the City raised this objection in a timely fashion after discovery into this issue was completed. As such, the court, in its discretion, finds that the City has not waived this objection by failing to raise it earlier.

USN next asserts that the City is collaterally estopped from arguing that USN is not the

---

the court will not consider the merits of this argument. *See 330 West Hubbard Restaurant Corp. v. United States*, 203 F.3d 990, 997 (7th Cir. 2000) ("A party's failure to address or develop a claim in its opening brief constitutes a waiver of that claim, for it is not the obligation of this court to research and construct the legal arguments open to the parties, especially when they are represented by counsel. . . . In order to develop a legal argument effectively, the facts at issue must be bolstered by relevant legal authority; a perfunctory and undeveloped assertion is inadequate to raise a separate basis for appeal.") (internal citations and quotations omitted).

proper party to this lawsuit because the City did not raise this objection in a prior state court action between the parties.[4] The court looks to Illinois law to determine the preclusive effect to be given to an Illinois judgment. *Brokaw* v. *Weaver*, 305 F.3d 660, 669 (7th Cir. 2002). In Illinois, collateral estoppel requires that "(1) the issues decided in the prior adjudication are identical to the issues presented for adjudication in the current proceeding; (2) there be a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party or in privity with a party in the prior action." *Kalush* v. *Deluxe Corp.*, 171 F.3d 489, 493 (7th Cir. 1999).

In the prior action, the City filed an interpleader complaint against Global and HMS to adjudicate their claims to monies that the City undisputedly owed. USN was not named as a party to that litigation, but USN filed an answer and a statement of claim as the successor in interest to Global. The City never answered USN's statement. Ultimately, the Illinois court entered an agreed order in which the City agreed to make a payment to USN, "as successor in interest to Global," in settlement of the City's obligation to Global and HMS. This case, by contrast, involves specific invoices, which the City disputes that it owes to any party. That the City did not contest in the state action that USN was the successor in interest to certain monies does not mean that the City agreed that USN is the successor in interest to all monies owed by the City pursuant to its contract with Global. *See* 8/11/01 Agreed Order ("Global and HMS having fully settled and compromised all claims relating to the payment by the City of Chicago of the remaining $44,800 of the obligations *which are the subject of this litigation. . . .*) (emphasis added). Thus, it is not apparent that the

---

[4]The court notes that while USN accurately stated Illinois' requirements for collateral estoppel, USN engaged in no meaningful legal analysis of its collateral estoppel argument. Essentially, USN recited the collateral estoppel standard, briefly stated facts relating to the prior litigation without citing to its Local Rule 56.1statement, and then concluded that collateral estoppel applies. This is not legal analysis, which is the application of case law to the facts, and is not sufficient to state a cognizable argument. *See, supra,* note 3.

parties raised or litigated whether USN is a successor in interest to Global as to the Chicago invoices at issue in this case. As such, USN has not demonstrated that the City is collaterally estopped from raising its objection that USN is not a proper party to this action. *See Village of Northbrook* v. *Cannon*, 377 N.E.2d 1208, 1213, 61 Ill. App.3d 315 (Ill. App. Ct. 1978) (stating that collateral estoppel "precludes parties and their privies from litigating facts in a subsequent action which were specifically litigated and determined in a prior action").

Finally, USN argues, without citing to any authority, that the City has admitted that USN is the proper party to this action. In the City's memorandum in support of its Motion to Dismiss, the City stated in footnote 1, "As noted in the Amended Complaint, USN is the successor in interest to an entity known as Global Health Systems, Inc. Therefore, although Global is referred to throughout the Amended Complaint, for the sake of clarity, the City refers to Plaintiff as USN in the instant motion." City's Memorandum in Support of Its Motion to Dismiss at 1. The city's use of "noted" rather than "alleged" or "claimed," cannot be construed to be a binding admission, particularly in a motion to dismiss, which must takes all of the allegations stated in the complaint as true. *See Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke* v. *City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996). Nor is the use of "noted" indicative of a conscious, deliberate waiver of a legal argument. *See Keller* v. *United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them."); *In re Lefkas Gen. Partners*, 153 B.R. 804 (N.D. Ill. 1993) (noting that judicial admissions are "any 'deliberate, clear and unequivocal' statement, either written or oral, made in the course of judicial proceedings"). Finally, this statement cannot be legitimately characterized as anything more than an attempt to make clear to whom the City is referring in its

20

memorandum. The court, therefore, finds that the City has not admitted that USN is the proper party to this action.

## ORDER

For the reasons stated above, the court grants the City's motion to strike opposing counsel's remarks as uncivil and unprofessional [#110] but denies the City's motion for summary judgment and, in the alternative, partial summary judgment [#62] and motion to strike USN's amended Local Rule 56.1 statement of material facts [#88]. The court also denies USN's motion for partial summary judgment [#67]. This matter is set for a hearing on April 4, 2006 to set a date for trial.

ENTER:    _Joan H Lefkow_

JOAN HUMPHREY LEFKOW
United States District Judge

DATED: March 21, 2006 MD